IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| TINA TENPENNY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 3:19-cv-00420 |
| v. | ) | |
| | ) | JUDGE CAMPBELL |
| PRIME NOW, LLC, | ) | MAGISTRATE JUDGE HOLMES |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM

Pending before the Court is Defendant's Motion for Summary Judgment. (Doc. No. 68). Plaintiff responded to the motion (Doc. No. 72) and Defendant filed a reply (Doc. No. 77). In support of the motion, Defendant filed a Statement of Undisputed Material Facts (Doc. No. 70) to which Plaintiff has filed a response (Doc. No. 72-1) and Defendant filed a reply (Doc. No. 78) (hereinafter "Def. SOF"). Also before the Court is Plaintiff's Motion for Summary Judgment (Doc. No. 65), Defendant's response to the motion (Doc. No. 75), and Plaintiff's reply (Doc. No. 79). Plaintiff filed a Statement of Undisputed Material Facts in support of her motion (Doc. No. 66-1) and Defendant responded (Doc. No. 76) (hereinafter "Pl. SOF").

### I. BACKGROUND

Plaintiff Tina Tenpenny worked for Defendant Prime Now, LLC as an Assistant Manager packaging and bagging orders at Prime Now's fulfillment center in Nashville, Tennessee. (Def. SOF, ¶ 2; Pl. SOF, ¶ 2). The process of packaging orders is referred to as "slamming." (Pl. SOF, ¶ 2). Prime Now uses independent contractor delivery drivers. (Def. SOF, ¶ 8). The delivery drivers would sometimes help Prime Now associates "slam," even though it was against Prime Now policy. (Pl. SOF, ¶ 11; McHugh Dep., Doc. No. 68-4 at 4-6). In January 2018, Plaintiff became uncomfortable being around one of the drivers, Jarod Ryan. (Pl. SOF, ¶ 7). Her

discomfort appears to be based text messages Ryan sent to Plaintiff and statements from her co-worker, Emily Cozart, that Ryan was "crazy and dangerous" and was telling the other drivers, in crude terms, that Plaintiff was having sex with one of the other drivers. (*Id*., ¶ 6). Due to her discomfort being around Ryan, Plaintiff avoided her own work area if Ryan was there. (*Id*., ¶ 7).

On January 15, 2018, Plaintiff spoke with the Operations Manager, Sean McHugh. (*Id*., ¶ 12). The parties agree that Plaintiff complained about drivers in the slamming area, that she specifically mentioned Jarod Ryan, and that she told McHugh that Ryan was texting her, but they disagree regarding the specifics of the discussion. (*Id*., ¶ 12; Def. SOF, ¶ 8; McHugh Dep., Doc. No. 68-4 at 7-9). Her complaint was either a general complaint about drivers in the slamming area where they were not supposed to be, a complaint that Ryan was sending her text messages that made her uncomfortable, a complaint that Ryan made her uncomfortable when he was in her work area because of text messages, or some combination thereof. (*Id*.).

Plaintiff claims that after she spoke with McHugh, Ryan was "stalking" her by "trying to get near her, calling her phone, and texting her." (Pl. SOF, ¶ 17). One night in late February, when Plaintiff was alone in the warehouse, Ryan rang the doorbell repeatedly. (*Id*.). Plaintiff reported the last incident to her supervisor, Wade Larson, the following day. (*Id*.).

In March 2018, Plaintiff told McHugh that Ryan was continuing to send her text messages. She showed McHugh one text message that appeared to be part of a lengthy exchange.[1] (McHugh Dep., Doc. No. 68-4 at 126, 148). At McHugh's suggestion, Plaintiff asked Ryan to stop texting her and he did. (Pl. Dep. 70, 134).

---

[1] The cited portion of the record is McHugh's deposition testimony that Plaintiff showed him the text message in "exhibit 1," but the deposition exhibits were not included in the excerpts filed. Plaintiff claims the messages was one from Ryan in which he told her she could "fuck don." (Pl. SOF, ¶ 18).

2

It is not clear whether Plaintiff complained about drivers in the slamming area during the March conversation, however, around that time McHugh instructed the assistant managers that they could not use drivers to help "slam." (McHugh Dep., Doc. No. 68-4, 20-21). In June 2018, Plaintiff reported to Human Resources Business Partner Clarisa Thompson that Wade Larson, a supervisor, told her that he had a dream she was fired and "everybody was celebrating and cheering." (Pl. Dep., Doc. No. 68-1 at 146-47; Thompson Dep., Doc. No. 68-5 at 85, 102). Plaintiff met with Thompson to discuss her complaint about Larson. (Thompson Dep., Doc. No. 68-5 at 40). During this meeting, Plaintiff also mentioned that she and Emily Cozart were not speaking to one another because Cozart allowed Ryan to help slam even though she knew he and Plaintiff did not get along and she mentioned that Ryan sent her text messages. (*Id*. at 105).

After the meeting with Thompson in June 2018, Prime Now opened an official investigation into the text messages and Plaintiff's claim that she was uncomfortable. (*Id*.). Thompson, McHugh, and Plaintiff met via telephone on July 2 and 3, 2018, and discussed Plaintiff's complaint regarding the text messages. (Def. SOF, ¶¶ 16, 20; *see also*, transcripts of the July 2 and July 3, 2018, telephone calls at Doc. Nos. 68-6 and 68-7). Plaintiff stated that she did not want to pursue a harassment claim and was not asking for an investigation. (Doc. No. 68-7 at 8-9). Although she initially said she would provide copies of the text messages, she ultimately refused to do so. (Pl. Dep., Doc. No. 68-1 at 221).

Citing a number of inconsistencies and what she characterized as evasive answers to questions regarding Plaintiff's out-of-work relationship with Ryan, Thompson determined that Plaintiff had, at best, told "different truths," and at worst, lied during the investigation. She terminated Plaintiff's employment on July 16, 2018. (Transcript of July 16, 2018 meeting, Doc. No. 68-9).

3

On September 20, 2018, Plaintiff filed a complaint with the Equal Opportunity Employment Commission ("EEOC") alleging retaliation. The EEOC charge stated:

> Beginning in January, 2018, Driver Jarod Ryan began sending me sexually harassing texts discussing sex, private parts, etc. I complained to management, but no action was taken until March, 2018, when the texts stopped. I had texted Jarod to stop or Manager Sean McHugh would fire him. After I had complained about Jarod management began treating me differently. I complained about a manager to HR. HR began an investigation. On July, 2018 I was terminated. The reason given was that I did not comply with the investigation.

(Charge of Discrimination, Doc. No. 43-1). After receiving notice of right to sue from the EEOC, Plaintiff filed this case alleging her termination was retaliatory and in violation of Title VII. (Doc. No. 1).

## II. STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party bringing the summary judgment motion has the initial burden of informing the Court of the basis for its motion and identifying portions of the record that demonstrate the absence of a genuine dispute over material facts. *Rodgers v. Banks,* 344 F.3d 587, 595 (6th Cir. 2003). The moving party may satisfy this burden by presenting affirmative evidence that negates an element of the non-moving party's claim or by demonstrating an absence of evidence to support the nonmoving party's claims. *Id.*

In evaluating a motion for summary judgment, the Court views the facts in the light most favorable for the nonmoving party and draws all reasonable inferences in favor of the nonmoving party. *Bible Believers v. Wayne Cty., Mich.*, 805 F.3d 228, 242 (6th Cir. 2015); *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 570 (6th Cir. 2003). The Court does not weigh the evidence, judge the credibility of witnesses, or determine the truth of the matter. *Anderson v. Liberty*

4

*Lobby, Inc.*, 477 U.S. 242, 249 (1986). Rather, the Court determines whether sufficient evidence has been presented to make the issue of material fact a proper jury question. *Id.* The mere scintilla of evidence in support of the nonmoving party's position is insufficient to survive summary judgment; instead, there must be evidence from which the jury could reasonably find for the nonmoving party. *Rodgers* 344 F.3d at 595.

In ruling on a motion for summary judgment, "[a] district court is not … obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989). In determining whether a genuine issue of material fact exists on a particular issue, the court is entitled to rely only upon those portions of the verified pleadings, depositions, and answers to interrogatories, and admissions on file, together with any affidavits submitted, specifically called to its attention by the parties. The Court must consider only evidence that can be presented in an admissible form at trial. *Tranter v. Orick*, 460 F. App'x 513, 514 (6th Cir. 2012) ("The proffered evidence need not be in admissible form, but its content must be admissible.")

### III.   ANALYSIS

Title VII prohibits employers from retaliating against employees who oppose an unlawful employment practice. 42 U.S.C. § 2000e-3(a). "Title VII retaliation claims require proof that the desire to retaliate was the but-for cause of the challenged employment action." *Univ. of Tex. Southwestern Med. Ctr. v. Nassar*, 570 U.S. 338, 352 (2013). Because Plaintiff offers no direct evidence of retaliation, the Court considers her claim under the *McDonnell Douglas* burden shifting framework. *Kenney v. Aspen Tech., Inc*., 965 F.3d 443, 448 (6th Cir. 2020) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973)). To establish a prima facie case of retaliation, Plaintiff must show: (1) she engaged in activity protected by Title VII; (2) the

exercise of her protected rights was known to Defendant; (3) Defendant thereafter took an action that was materially adverse to the plaintiff; and (4) Plaintiff's protected activity was the but-for cause of the adverse employment action. *Id.* If Plaintiff establishes a prima facie case, the burden shifts to the Defendant to provide a legitimate, nondiscriminatory reason for its actions. *Id.* If Defendant satisfies this burden, the burden shifts back to Plaintiff to demonstrate that the proffered reason was a mere pretext for retaliation. *Id.*

## A. EEOC Charge

As an initial matter, Defendant argues that Plaintiff should not be able to rely upon allegations not included in the EEOC charge, including the allegation that she reported being uncomfortable with drivers "slamming" in her work area. Defendant contends Plaintiff's retaliation claims should be limited to retaliation based on her complaint about Ryan's text messages because only this allegation was part of the EEOC charge.

"As a general rule, a plaintiff cannot bring claims in a lawsuit that were not included in [her] EEOC charge." *Younis v. Pinnacle Airlines, Inc*., 610 F.3d 359, 361-62 (6th Cir. 2010) (citing 42 U.S.C. § 2000e-5(f)(1)). "The charge must be 'sufficiently precise to identify the parties, and to describe generally the action or practices complained of.'" *Id.* The *Younis* court described the rationale for the requirement that a plaintiff must first bring claims with the EEOC before pursuing a lawsuit.

> This rule serves the dual purpose of giving the employer information concerning the conduct about which the employee complains as well as affording the EEOC and the employer an opportunity to settle the dispute through conference, conciliation, and persuasion. Hence, allowing a Title VII action to encompass claims outside the reach of the EEOC charges would deprive the charged party of notice and would frustrate the EEOC's investigatory and conciliatory role.

*Id.* at 361-62. The *Younis* court also recognized that EEOC complaints are typically filed *pro se* and directed that they should be construed liberally, allowing consideration of claims that are

6

reasonably related to or grow out of the factual allegations in the EEOC charge." *Id*. at 362 (citing *Randolph v. Ohio Dep't of Youth Servs*., 453 F.3d 724, 732 (6th Cir. 2006). "As a result, 'whe[n] facts related with respect to the charged claim would prompt the EEOC to investigate a different, uncharged claim, the plaintiff is not precluded from bringing suit on that claim.'" *Id*. (citing *Davis Sodexho*, 157 F.3d 460, 463 (6th Cir. 1998)). "This is known as the 'expected scope of investigation test' and requires a plaintiff to have alleged sufficient facts in his or her EEOC complaint to put the EEOC on notice of the other claim even though the plaintiff failed to check the appropriate box on the EEOC's complaint form." *Spengler v. Worthington Cylinders*, 615 F.3d 481, 491 (6th Cir. 2010) (citing *Dixon v. Ashcroft*, 392 F.3d 212, 217 (6th Cir. 2004).

Although the exhaustion requirement may preclude claims that are not reasonably expected to grow out of the facts alleged, Defendant does not seek to preclude a claim. Instead, Defendant seeks to preclude the use of facts not alleged in the EEOC complaint. The case law does not support such an exclusion. Moreover, the factual allegations Defendant seeks to exclude – that Plaintiff complained about drivers in the "slamming" area – are sufficiently related to her complaints about the text messages such that exclusion is unwarranted.

## B. Protected Activity

Title VII protects employees from retaliation for having opposed an employer's unlawful actions. 42 U.S.C. § 2000e-3(a). A plaintiff must demonstrate that her opposition was reasonable and based on a good faith belief that the employer was acting in violation of Title VII. *Barrett v. Whirlpool Corp*., 556 F.3d 502, 516 (6th Cir. 2009). Plaintiff contends that her complaint that a driver was sending her text messages that made her uncomfortable and that the presence of drivers in her work area made her uncomfortable is protected activity even though she did not label the behavior as harassing and did not want to make a formal complaint. Plaintiff also

7

contends that her complaint of retaliation – that co-workers were treating her badly because she caused the drivers to be barred from slamming – is protected activity.

Defendant argues that Plaintiff's complaints were not protected because she explicitly stated that she did not believe she was being harassed, only that the text messages and driver presence made her "uncomfortable." Defendant asserts that because Plaintiff repeatedly refused the invitation to provide the text messages so her claims could be investigated, it is disingenuous for Plaintiff to now claim that she was reporting sexual harassment during her employment. Defendant further argues that the complaints about drivers "slamming" were complaints about general work conditions and did not bear any indication that Plaintiff was complaining about discriminatory employment practices.

Plaintiff complained about drivers "slamming" and the text messages from Ryan on more than one occasion. She consistently stated that they made her "uncomfortable." In explaining her discomfort, she told McHugh that she had been raped in the past. Plaintiff showed McHugh at least one text message, purportedly from Ryan, that was sexual in nature[2] and referenced the "Me Too movement." (Pl. Aff., Doc. No. 67-1). Plaintiff claims McHugh said the message was "disgusting." (*Id*.). Although Defendant attempts to divorce Plaintiff's complaints about the text messages and her complaints about drivers helping with "slamming," the allegations appear to be intertwined. Moreover, an internal review found that Plaintiff's complaint to McHugh that a driver was making her feel uncomfortable should have been officially reported as a possible violation of the Amazon Sexual Harassment Policy. (Doc. No. 72-6). In light of these facts, the

---

[2] It is not clear from the record which message Plaintiff showed McHugh, but the messages clearly contain sexual content. Construing the facts in the light most favorable to the Plaintiff, the Court will assume Plaintiff showed McHugh a message that was sexual in nature. (*See* Doc. No. 67-2).

8

Court finds there is, at a minimum, a question of fact regarding whether Plaintiff's complaints were protected activity.

The cases cited by Defendant do not compel a different result. In *Mattson v. Caterpillar*, 359 F.3d 885, 889 (7th Cir. 2004), the court held that the plaintiff has not established a protected activity when the claims of harassment were "utterly baseless," both objectively and subjectively unreasonable, and made in bad faith. In *Washington v. Verizon Wireless Texas, LLC*, No. H-07-1846, 2009 WL 10692633, at * 12-13 (S.D. Tex. Mar. 24, 2009) and *Love v. Kongsberg Automotive*, No. 13-1088, 2013 WL 5755564, at *4 (W.D. Tenn. Oct. 23, 2013), there was no evidence from which to conclude that the alleged harassment was discriminatory. As discussed above, that is not the case here.

Defendants do not dispute that Plaintiff has established the remaining elements of a prima facie case.[3] The burden therefore shifts to the Defendant to provide a legitimate non-retaliatory reason for termination.

## C. Legitimate Non-Retaliatory Reason and Pretext

Defendant states that Plaintiff was terminated due to her failure to fully cooperate with the company's investigation, which was a violation of the company's standards of conduct. Defendant provides a list of examples of inconsistencies in Plaintiff's story regarding her relationship with Ryan, what Defendant's characterize as dishonest or less-than-forthright conversations with her supervisor and human resources, and her refusal to provide copies of the

---

[3] Defendant concedes that termination is an adverse activity for purposes of establishing a prima facie case. Plaintiff asserts that the conduct of the investigation, which she alleges did not follow internal guidelines, is an additional adverse activity. Because Defendants do not contest the existence of an adverse activity, and in light of the ultimate disposition of these motions, the Court does not separately consider Plaintiff's claims with regard to the conduct of the investigation.

text messages.[4] At the time of her termination, however, Defendant knew only that Plaintiff refused to provide the messages.

Defendant having provided a non-retaliatory reason for termination, the burden then shifts to Plaintiff to demonstrate that the reasons given were "mere pretext." *Kenney*, 965 F.3d at 448. Pretext can be established by showing that the proffered reason was factually false, did not actually motivate discharge, or was insufficient to motivate discharge. *Tingle v. Arbors at Hillard*, 692 F.3d 523, 530 (6th Cir. 2012). Courts have recognized that in retaliation cases, an employer's true motivations are particularly difficult to ascertain, thereby frequently making such factual determinations unsuitable for disposition at the summary judgment stage. *Singfield v. Akron Metro. Housing Auth.*, 389 F.3d 555, 564 (6th Cir. 2004). "[C]aution should be exercised in granting summary judgment once a plaintiff has established a prima facie inference of retaliation through direct or circumstantial evidence." *Id; see also, U.S. Postal Serv. Bd. of Governors v. Aikens*, 460 U.S. 711, 716 (1983) (acknowledging that discrimination cases present difficult issues for triers of fact because there is rarely "'eyewitness' testimony as to the employer's mental process.") "At the summary judgment stage, the issue is whether the plaintiff has produced evidence from which a jury could reasonably doubt the employer's explanation. If so, [the] prima facie case is sufficient to support an inference of discrimination at trial." *Montell v. Diversified Clinical Servs., Inc.*, 757 F.3d 497, 508 (6th Cir. 2014) (citation omitted).

Plaintiff claims that she did, in fact, cooperate with the investigation to the best of her ability, that the investigation itself was a "sham," and that Defendant's articulated reason for

---

[4] During the course of this litigation evidence surfaced that, at the very least, raises a question of whether Plaintiff deleted the text messages during the investigation. (*See e.g.*, Pl. Dep., Doc. No. 68-1 at 195-98; Mullinix Decl., Doc. No. 68-11).

10

firing her has no basis in fact. Although Plaintiff's evidence of pretext is scant and based almost entirely on her own testimony regarding her participation in the investigation, it is not for the Court to weigh the evidence or assess the credibility of witnesses. Moreover, given that the termination occurred during the investigation of Plaintiff's claims regarding the text messages, a reasonable jury might conclude that the proffered reason was a pretext for retaliation. Ultimately, the question of whether Plaintiff's termination was retaliatory is a question for the jury.

Viewing the evidence in the light most favorable to the Plaintiff, as the Court must at this stage, the Court finds Plaintiff has submitted evidence from which a jury could conclude that the reason stated for Plaintiff's termination was pretext. Accordingly, Defendant's motion for summary judgment on Plaintiff's claim for retaliation is denied.

**D. Plaintiff's Motion for Summary Judgment**

To be successful on her motion for summary judgment, Plaintiff must establish that there is no dispute of material fact as to any element of her claim and that she is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56. To prove retaliation, Plaintiff must establish that the desire to retaliate was the but-for cause of the termination. *See Univ. Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 352 (2013).

Plaintiff argues that, as a matter of law, Title VII prohibits firing an employee who complains of sexual harassment based upon the manner in which the employee participates in the ensuing investigation. (Doc. No. 66 at 2-7). Essentially, she argues that termination for this reason establishes an employer's desire to retaliate as a matter of law. Plaintiff provides no legal authority for this argument, and the Court is not aware of any case in which the Plaintiff was awarded judgment as a matter of law on a claim for retaliation. Indeed, the motivations of an

11

employer are inherently a question of fact. *Singfield*, 389 F.3d at 564 (recognizing that factual determinations of an employer's true motivations are unsuitable for disposition at the summary judgment stage). Plaintiff's argument that her "hesitancy or reluctance" during the investigation did not justify her firing is relevant to show that Defendant's stated reason for termination was pretextual. It does not, however, establish as a matter of law that her firing was the result of unlawful retaliation.

Because Plaintiff has not shown that there are not material issues of fact with regard to her claim of retaliation, her motion for summary judgment is **DENIED**.

## IV. CONCLUSION

For the reasons stated, Defendant's Motion for Summary Judgement is **DENIED**, and Plaintiff's Motion for Summary Judgment is **DENIED**. An appropriate Order will enter.

_____
WILLIAM L. CAMPBELL, JR.
UNITED STATES DISTRICT JUDGE